UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,           :

              - v. -                 :      07 Cr. 732 (SCR)

OSCAR LEMUS,                         :

              Defendant.             :

- - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S PRE-TRIAL MOTIONS**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Richard C. Tarlowe
Assistant United States Attorney
      -Of Counsel-

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................... 1

    A.   Offense Conduct .............................................................................................. 1

    B.   Post-Indictment Discovery .............................................................................. 3

ARGUMENT ..................................................................................................................... 4

    I.     NO BILL OF PARTICULARS IS WARRANTED ........................................ 4

    II.    THE DEFENDANT'S MOTIONS FOR DISCOVERY SHOULD BE DENIED ......... 7

         A.   Evidentiary Exhibits ........................................................................ 8

         B.   Informant-Related Information ........................................................ 9

         C.   Statements of the Defendant ........................................................... 11

         D.   Government Personnel Files ............................................................ 14

         E.   Rule 404(b) Material ....................................................................... 15

         F.   Brady Material ................................................................................. 16

         G.   Witness Statements .......................................................................... 17

         H.   Witness List ..................................................................................... 18

         I.    Impeachment Material ..................................................................... 20

         J.    Expert Summaries ........................................................................... 21

         K.   Results of Examinations or Tests ..................................................... 21

         L.   Material Seized From or Belonging to the Defendant ..................... 22

III. THE COURT SHOULD DENY THE DEFENDANT'S MOTIONS TO
     SUPPRESS HIS POST-ARREST STATEMENTS ......................................................22

     A.  The Defendant's Arrest Was Supported by Probable Cause ..............................24

     B.  The Defendant's Claim that Agents Failed to Provide Him With
         Miranda Warnings Does Not Warrant Suppression or a Hearing........................28

     C.  The Defendant's Claim that an Unidentified Attorney Called the Police
         Department on His Behalf Provides No Basis for Suppression or a Hearing .....28

     D.  Any Delay Between the Defendant's Arrest and Presentment Before a
         Magistrate Provides No Basis for Suppression or a Hearing .............................31

IV. THE COURT SHOULD DENY THE DEFENDANT'S MOTION FOR
    SUPPRESSION OF ANY IDENTIFICATION OF THE DEFENDANT
    OR FOR A HEARING ................................................................................................34

V.  THE COURT SHOULD DENY'S THE DEFENDANT'S MOTION FOR AN
    AUDIBILITY HEARING............................................................................................35

VI. THE INDICTMENT PROPERLY ALLEGES VENUE ............................................38

VII. THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS
     THE INDICTMENT BASED ON ENTRAPMENT AND OUTRAGEOUS
     GOVERNMENT CONDUCT ....................................................................................41

     A.  The Claim of Entrapment is Premature ............................................................42

     B.  The Claim of Outrageous Government Conduct
         Does Not Warrant Dismissal of the Indictment..................................................45

CONCLUSION.....................................................................................................................47

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the defendant's pretrial motions.

The defendant asks this Court for: (1) an order directing the Government to provide a bill of particulars; (2) an order directing the Government to produce additional and/or early discovery; (3) an order granting a probable cause hearing; (4) an order suppressing statements made by the defendant, or a suppression hearing; (5) an order suppressing any identification of the defendant, or a hearing; (6) an audibility hearing; (7) an order dismissing the Indictment for improper venue; and (8) an order dismissing the Indictment on the basis of entrapment and outrageous Government conduct, or a hearing.

The defendant's motions are without merit or are premature and, for the reasons set forth below, should be denied without a hearing.[1]

## BACKGROUND

### A.    Offense Conduct

As set forth in the Complaint, in February 2007, a confidential informant ("CI") advised law enforcement officers that he had spoken to the defendant about purchasing false identification documents from the defendant.  (Compl. ¶ 2).  On or about February 10, 2007, the

---

[1]    A grand jury returned a Superseding Indictment subsequent to the defendant's filing of his pretrial motions.  Whereas the initial Indictment charged the defendant with two counts of unlawfully transferring false identification documents, the Superseding Indictment charges him with conspiring to possess with intent to transfer unlawfully five and more identification documents.  The overt acts identified in the Superseding Indictment correspond with the two transactions charged in the initial Indictment.  For the sake of efficiency and to avoid unnecessary delay, the Government addresses the defendant's claims in the context of the Superseding Indictment.

CI spoke to the defendant in a consensually recorded phone call to discuss the purchase of false

identification documents the following day.  (Compl. ¶ 2).  During that call, the CI and the

defendant discussed the price of the false identification documents and the number of

photographs that would be needed to produce the documents. (Compl. ¶ 2).  The next day, law

enforcement officers met with the CI, equipped him with an audio recording device, and

provided him money to use for the purchase of false identification documents from the

defendant.  (Compl. ¶ 3).  Officers then conducted surveillance as the CI drove with the

defendant from Orangeburg, New York to Queens, New York, and then back to Orangeburg.

(Compl. ¶ 3).  Shortly thereafter, the officers recovered from the CI two false identification

documents, namely, a social security card and worker's authorization card, that appeared to be

issued by or under the authority of the United States but, in fact, were not.  (Compl. ¶ 3).  The

CI advised the officers that the defendant had provided the documents to him.  (Compl. ¶ 3).

        On or about March 1, 2007, the CI advised officers that he had arranged to

purchase ten more false identification documents from Lemus.  (Compl. ¶ 4).  On March 3,

2007, law enforcement officers met with the CI, equipped him with an audio recording device,

and provided him money to use for the purchase of false identification documents from the

defendant.  (Compl. ¶ 5).  Officers then conducted surveillance as the CI drove with the

defendant from Spring Valley, New York to Queens, New York, and then dropped the

defendant off in Orangeburg.  (Compl. ¶ 5).  Shortly thereafter, the officers recovered from the

CI ten false identification documents, namely, social security cards, worker's authorization

cards, and a permanent resident card, that appeared to be issued by or under the authority of the

United States but, in fact, were not.  (Compl. ¶ 5).  The CI again advised officers that the

defendant had provided the documents to him.  (Compl. ¶ 5).

       Law enforcement officers arrested Lemus on June 12, 2007, and he was

presented before United States Magistrate Mark D. Fox on June 13, 2007.  On the day of his

arrest, Lemus acknowledged that he had, in fact,  purchased false identification documents for

people.  (Compl. ¶ 6).

       On or about August 8, 2007, a grand jury sitting in the Southern District of New

York returned a two-count Indictment against the defendant, charging him with the unlawful

transfer of false identification documents on February 11, 2007 and March 3, 2007, in violation

of Title 18, United States Code, Section 1028(a)(2).

       On or about November 19, 2007, a grand jury returned a one-count Superseding

Indictment, charging the defendant with conspiring to possess with intent to transfer unlawfully

five and more false identification documents from in or about August 2006 through in or about

March 2007.  The Superseding Indictment identified two overt acts committed in furtherance of

the conspiracy that correspond with the two transactions charged in the initial Indictment,

namely, (1) the defendant traveled from Orangeburg, New York to Queens, New York on

February 11, 2007 and (2) the defendant traveled from Spring Valley, New York to Queens,

New York on March 3, 2007.

**B.**     **Post-Indictment Discovery**

       On August 23, 2007, the Government produced to the defendant copies of the

twelve false identification documents referenced in the Complaint and initial Indictment; copies

of the photographs and names provided to the defendant to be used for the false identification

3

documents; a photo array containing a photograph of the defendant; a report by a law

enforcement agent containing statements made by the defendant to agents on June 12, 2007, the

day of his arrest; and a compact disc containing (1) a recorded phone call between the CI and

the defendant on February 10, 2007; (2) a recording of the transaction on February 11, 2007;

and (3) a recording of the transaction on March 3, 2007.  The Government also advised the

defendant that the documents were available for his inspection.  Thereafter, on November 26,

2007, the Government provided additional discovery, including another version of the June 12,

2007 report documenting the defendant's statements in unredacted form, a copy of the

defendant's criminal history, and a list of names and phone numbers retrieved from the

defendant's cellular phone on the day of his arrest.

## ARGUMENT

### I.     NO BILL OF PARTICULARS IS WARRANTED

The defendant seeks a bill of particulars.  Specifically, he requests, among other

things, disclosure of the identity of other individuals "involved with the crime;" more specific

times and locations of the charged offenses; the false identification documents charged in the

Indictment; and the identities of the individuals "to whom the false identification documents

were transferred" and "from whom" they were received.  (Def.'s Mot. ¶ 1).  The defendant's

motion reflects an improper attempt to obtain additional discovery to which he is not entitled, as

the defendant has been more than adequately advised of the specific acts of which he is accused.

Accordingly, the Court should deny the defendant's motion for a bill of particulars.

The proper scope and function of a bill of particulars is to furnish facts

supplemental to those contained in the indictment that are necessary to inform the defendant of

the charges against him with sufficient precision so as to enable him to prepare his defense, to

avoid unfair surprise at trial, and to preclude a second prosecution for the same offense. See

Fed. R. Crim. P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States

v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  It is well established that "[a] bill of

particulars is not an investigative tool, or a tool of discovery, but rather 'is meant to apprise the

defendant of the essential facts of a crime and should be required only where the charges of an

indictment are so general that they do not advise a defendant of the specific acts of which he is

accused.'" United States v. Ordaz-Gallardo, No. 06 Cr. 551 (SCR), 2007 WL 3050976, *5

(S.D.N.Y. Oct. 17, 2007) (quoting United States v. Perez, 940 F. Supp. 540, 550 (S.D.N.Y.

1996)); see Torres, 901 F.2d at 234.  The ultimate test is whether the information sought is

necessary, not whether it is helpful.  United States v. Mitlof, 165 F. Supp. 2d 558, 569

(S.D.N.Y. 2001); see Ordaz-Gallardo, 2007 WL 3050976, *5; United States v. Trippe, 171 F.

Supp. 2d 230, 240 (S.D.N.Y. 2001) ("[T]he proper test in deciding whether a bill of particulars

should be required of the Government is whether the bill of particulars is necessary for the

defense, not whether it would aid the defendant in his preparation."); United States v. Conley,

No. 00 Cr. 816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002).

        If the information the defendant seeks "is provided in the indictment or in some

acceptable alternate form," such as discovery, no bill of particulars is required.  Bortnovsky,

820 F.2d at 572; United States v. Morales, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).  In other

words, "[a]cquisition of evidentiary detail is not the function of the bill of particulars," Torres,

901 F.2d at 234, and the defense cannot use a bill of particulars as a device to compel disclosure

of the Government's evidence prior to trial.  See United States v. Triana-Mateus, No.  98 Cr.

5

958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974)).  Under the relevant legal standard, the Government is not required to (1) "particularize all of its evidence," United States v. Cephas, 937 F.2d 816, 834 (2d Cir. 1991); (2) disclose the precise manner in which the crimes charged in the indictment were committed, see Torres, 901 F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pre-trial discovery); or (3) provide the defendant with a preview of the Government's case or legal theory.  United States v. Muyet, 945 F. Supp. 586, 588-589 (S.D.N.Y. 1996).

        In this case, the defendant unquestionably has been advised "of the specific acts of which he is accused," Torres, 901 F.2d at 234, and there is no danger that he will suffer from unfair surprise at trial.  Indeed, the defendant's claim that a bill of particulars is necessary is undermined by other portions of his own motion.  In particular, defense counsel's supporting affidavit contains detailed allegations concerning the circumstances surrounding the two transactions identified in the initial Indictment and encompassed by the conspiracy charged in the Superseding Indictment, namely, the two overt acts.  See Riley Aff. ¶¶ 40-49.  Thus, the defendant's own motion makes clear that he is well aware of the "specific acts of which he is accused." Torres, 901 F.2d at 234.

        The defendant has, in fact, received more than ample information about the crime charged in the Superseding Indictment.  First, the Superseding Indictment itself identifies the date range of the conspiracy, and sets forth specific dates and locations of the two overt acts committed in furtherance of that conspiracy.  Second, the Complaint describes in greater detail the circumstances surrounding the charged offense and, in particular, the two overt acts.  Third,

6

the Government has provided discovery to the defendant that includes (1) copies of twelve false identification documents, (2) the passport photographs and aliases used for the false identification documents, and (3) three separate audio recordings that contain the defendant's voice, including two recordings made during the overt acts specified in the Superseding Indictment.

Despite the allegations in the Complaint and Superseding Indictment, and the discovery provided by the Government, including these recordings, Lemus seeks further information. His request for a bill of particulars is a transparent attempt to obtain additional, detailed discovery about the charged offense, and he is not entitled to it. See Torres, 901 F.3d at 233-34. Taken together, the materials already provided give Lemus ample opportunity to prepare his defense and leave no possibility of unfair surprise. Accordingly, the defendant's attempt to obtain unauthorized discovery through a bill of particulars should be denied.

## II.    THE DEFENDANT'S MOTION FOR DISCOVERY SHOULD BE DENIED

The defendant makes a litany of boilerplate requests for discovery from the Government, each of which is addressed in turn below. The Court should deny the defendant's discovery requests because (1) the requested materials do not exist or have already been provided, (2) the requests exceed the bounds of permissible discovery and are not authorized by the Federal Rules of Criminal Procedure or any statute, or (3) the requests are premature. The Government is cognizant of its obligations under Rule 16 of the Federal Rules of Criminal Procedure and believes that it has complied with those obligations. The Government is also aware of its continuing obligation under Rule 16(c), and will provide additional materials subject to discovery if and when such materials become available.

7

A.    **Evidentiary Exhibits**

The defendant asks the Court to direct the Government to provide copies of evidentiary exhibits before trial, but does not specify any particular timeframe.  Although the Government will provide, prior to trial, those evidentiary exhibits it intends to use at trial, the defendant's motion is premature.  See United States v. Russo, 483 F. Supp. 2d 301, 309-10 (S.D.N.Y. 2007) (rejecting defendant's request that the Government identify its trial exhibits 30 days before trial even though the Government had produced approximately 16,000 pages of documents, as well as several audio tapes and transcripts).

Rule 16 does not require designation of trial exhibits within any particular timeframe, see United States v. Nachamie, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000), but the Court has discretion to order such designation in order to facilitate an orderly trial.  United States v. Palermo, No. 99 Cr. 1199 (LMM), 2001 WL 185132, at *6 (S.D.N.Y. Feb. 26, 2001). Courts in this district have routinely found one week to ten days to be sufficient in cases where the volume of discovery far exceeds that here.  See United States v. Falkowitz, 214 F. Supp. 2d 365 (S.D.N.Y. 2002) (ordering the designation of exhibits one week before trial, where the Government had produced about 100,000 pages in a prosecution for conspiracy and wire fraud); United States v. Earls, No. 03 Cr. 364 (NRB), 2004 WL 350725 (S.D.N.Y. Feb. 25, 2005) (ordering designation of exhibits 10 days before trial due to the voluminous nature of discovery in wire fraud prosecution); see also Russo, 483 F. Supp. 3d at 309-10.  In this case, which has a limited amount of documentary and physical evidence, there is no need for an order directing the Government to provide copies of exhibits prior to trial.

8

**B.**    **Informant-Related Information**

The defendant seeks a variety of information concerning the Government's confidential informant, including: his identity; any prior criminal record; any promises of consideration provided to him by the Government; any prior testimony given by him; and any "evidence of his narcotic or other addiction habits."  (Br. at 4).  Lemus has no right to disclosure of the informant's identity absent an unusual showing of need, which he has fallen short of making.  Nor does he have an independent right to impeachment material or prior testimony of a non-testifying witness merely because the witness is an informant.

Nevertheless, the Government intends to call the CI to testify as a witness at trial, and will therefore disclose impeachment material and Jencks Act material on the same basis that it discloses such material for its other witnesses.  Likewise, the Government will disclose the CI's identity at the same time it discloses the identities of its other witnesses.  Lemus is entitled to nothing more than that, and therefore, the Court should deny his requests, including his remarkable request that the Court secure for him an interview of the CI.[2]

The "general and well-established rule is that the Government enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'"  United States v. Shamsideen, No. 03 Cr. 1313 (SCR), 2004 WL 1179305, at *11 (S.D.N.Y. March 31, 2004) (citing Roviaro v. United

---

[2]    In any event, it appears that the defendant already has the information he seeks, as the defendant's attorney spoke to the CI and met with him in-person prior to filing the instant motion.  Indeed, defense counsel's affidavit contains detailed allegations about the confidential informant's background; although the Government need not address now the veracity of those allegations, the defendant's attorney could only purport to know this information if he were aware of the informant's identity.  See, e.g., Riley Aff. ¶¶ 16-20.

States, 353 U.S. 53, 59 (1957), and United States v. Jackson, 345 F.3d 59, 69 (2d Cir. 2003)).

"Disclosure of a confidential informant's identity is an extraordinary remedy."  Ordaz-Gallardo,

2007 WL 3050976, at *3 (internal quotation marks omitted).  Accordingly, the defendant bears

the burden of demonstrating the need for disclosure of an informant's identity, and must show

that without such disclosure, he will be deprived of the right to a fair trial.  Id. (citing United

States v. Fields, 113 F.3d 313, 324 (2d Cir.1997)).

        To satisfy his burden, the defendant must do more than simply allege that the

informant was a participant in or witness to the crime charged, or that the informant might cast

doubt on the general credibility of a government witness.  Ordaz-Gallardo, 2007 WL 3050976,

at *3 (citing United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988)).  Here, Lemus fails to

make the required showing.  Instead, he makes only a generalized claim that disclosure is

necessary because the informant "was a percipient witness to or directly participated in the

criminal transaction."  (Br. at 3).  This assertion is inadequate to warrant the extraordinary

remedy he seeks. See Ordaz-Gallardo, 2007 WL 3050976, at *3.

        In any event, the Government intends to call the informant as a witness to testify

at trial.  Accordingly, the Government will disclose the CI's identity and will provide

impeachment material and Section 3500 material for the informant on the same basis that the

Government provides such information for its other witnesses.  This procedure is sufficient and

the defendant is entitled to nothing more.  See United States v. Tavarez, No. 07 Cr. 375 (SCR),

2007 WL 2963709, at *3 (S.D.N.Y. Oct. 11, 2007) (denying motion for disclosure of informant-

related information and holding that disclosure of Jencks Act and Giglio material for informant

prior to trial is sufficient); United States v. Murgas, 967 F. Supp. 695 (N.D.N.Y. 1997) (holding

10

that testimony of a confidential informant at trial obviates the need for pretrial disclosure of

informant's identity and that Jencks Act provides sufficient protection for defendant); United

States v. Leonard, 817 F. Supp. 286 (E.D.N.Y. 1992) (holding that disclosure of informant's

identity was not warranted where the Government indicated it would call the informant at trial

and provide impeachment material in advance of trial); United States v. Muyet, 945 F. Supp. at

602 n.16 (finding the defendant's right to a fair trial adequately protected without early

disclosure of a CI's identity where the Government represented that the CI would be called to

testify at trial and that impeachment material would be provided one week before trial).

Likewise, several federal courts of appeals have held that where an informant testifies at trial, a

defendant is no more entitled to disclosure of the informant's identity prior to trial than he is to

pretrial disclosure of the identity of any other government witness.  See, e.g., United States v.

Perkins, 994 F.2d 1184, 1190-91 (6th Cir. 1993); United States v. Pennick, 500 F.2d 184, 186-

87 (10th Cir. 1974).  Because Lemus will be apprised of the CI's identity before trial and will

have the opportunity to cross-examine him, Lemus cannot claim the denial of his right to a fair

trial under Roviaro.  See Muyet, 945 F. Supp. at 602 n.16.

       Accordingly, Lemus's motion for disclosure of informant-related information

should be denied.

## C.    **Statements of the Defendant**

       The defendant baldy asserts that he "is entitled to defendant's statements and any

documents reflecting any summaries thereof," including "any reports theron" and "any

statements to any person."  (Br. at 4).  Remarkably, the defendant claims this is an "automatic

right."[3]  (Br. at 4).  The defendant's assertion lacks any basis in the law and is belied by the plain language of Rule 16.

Rule 16 draws a distinction between oral statements, on the one hand, and written and recorded statements, on the other hand.  See United States v. Siraj, 468 F. Supp. 2d 408, 417-19 (E.D.N.Y. 2007).  The former are discoverable only when made "in response to interrogation by a person the defendant knew was a government agent."  Fed. R. Crim. P. 16(1)(A).  Thus, a defendant's oral statements are discoverable only when made (1) in response to interrogation (2) by someone whom the defendant knew was a Government agent.  The Government has provided a report by a law enforcement agent memorializing the defendant's statements to Government agents on July 12, 2007.  The Government is not aware of any other oral statements by the defendant that are discoverable under Rule 16(1)(A).

Rule 16(1)(B) provides for broader discovery of written or recorded statements and does not contain the same limitations that apply to oral statements.  Instead, the Rule requires the Government to provide any relevant written or recorded statement by the defendant if the statement is within the Government's possession, custody, or control and the attorney for the Government knows, or through due diligence could know, that the statement exists.  Pursuant to Rule 16(1)(B), the Government has provided a compact disc containing recordings of (1) a phone call between the defendant and CI on February 10, 2007, (2) a meeting between the defendant and CI on February 11, 2007, and (3) a meeting between the defendant and CI on March 3, 2007.  The Government is not aware of other written or recorded statements that are

---

[3]    The 1974 case, United States v. Villa, 370 F. Supp. 515 (D. Conn. 1974), on which the defendant relies for the assertion that this is "an automatic right" was decided before key amendments to Rule 16 in 1975.

discoverable pursuant to Rule 16(1)(B).

        In seeking all of the defendant's statements, the defendant improperly tries to broaden the scope of Rule 16(1) beyond its plain language.  The defendant appears to be arguing that he is entitled to any documentation of oral statements of the defendant as a "written or recorded statement of the defendant" under Rule 16(1)(B).  However, an oral statement does not become a written or recorded statement merely because it has been documented at some point; therefore, the defendant is not entitled to documentation of oral statements unless the statements were made in response to interrogation by someone whom the defendant knew to be a government agent.  See Tavarez, 2007 WL 2963709, at *1 (citing In re United States, 834 F.2d 283, 284-86 (2d Cir. 1987) (holding that oral statements by a defendant to persons other than known government agents, which have been documented at some point, are not discoverable as "written or recorded statements" made by the defendant)); Siraj, 468 F. Supp. 2d at 417-18 (holding that defendant was not entitled under Rule 16(a)(1)(B) to written summary of defendant's oral statements to an undercover officer); United States v. Burns, 15 F.3d 211, 214 n.1 (1st Cir. 1994) (agreeing with the Second Circuit that "an oral statement does not become 'written or recorded' merely because a government agent made a written summary of the statement before trial").  By way of example, to the extent Lemus made a statement to a third party, and that third party then conveyed the information to a law enforcement agent who memorialized it, the agent's written record of the defendant's statement would not be discoverable under Rule 16(1)(B).

        Insofar as Lemus is actually requesting witness statements, rather than statements discoverable under Rule 16, the Government addresses below the discovery of

13

witness statements.  The Government will provide Section 3500 material the Friday of the week before trial.  The Court should not, however, allow the defendant to expand Rule 16(1)(B) beyond its limits "to obtain by the back door what [he is] not entitled to obtain by the front door."  United States v. Nelson, 606 F. Supp. 1378, 1389 (S.D.N.Y. 1985) (rejecting defendant's motion for the production of statements of potential Government witnesses in which the defendant's statements were repeated).

## D.    Government Personnel Files

The defendant also asks the Court for an order directing the Government to produce personnel files for any law enforcement agents the Government intends to call at trial. Neither Rule 16 nor any other rule or statute requires such extraordinary discovery, and the defendant points to none.  The defendant's only basis for this request is that "the credibility of any officers alleging an admission by the defendant will be at issue at trial."  (Br. at 4).  That the defense may try to put at issue the credibility of testifying law enforcement officers, which is true in virtually every criminal case, does not permit the defendant to expand the scope of Rule 16 and convert the personnel files of law enforcement officers into an open book for the defendant to rummage through.[4]  The Government notes that it is aware of its Giglio obligations and will provide impeachment material before the corresponding witness will testify.  This approach will sufficiently enable the defendant to explore the credibility of the Government's law enforcement witnesses on cross-examination.

---

[4] Even in the one case on which the defendant relies, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), from the Ninth Circuit, the court did not require the Government to produce all of its witnesses' personnel files.

**E.**    **Rule 404(b) Material**

The defendant requests an order directing the Government to disclose at least thirty days prior to jury selection evidence that it will seek to admit at trial pursuant to Rule 404(b). This request should be denied.

First, the Government is cognizant of the provisions for pretrial notice in Rule 404(b), and will provide such Rule 404(b) notice prior to trial. Rule 404(b) provides no strict time deadline for notification. The Rule merely requires that the Government provide "reasonable notice in advance of trial, or during trial, if the court excuses pretrial notice on good cause shown" of its intent to use evidence of other crimes, wrongs, and bad acts. Fed. R. Evid. 404(b). Courts in this District have routinely held that ten days' notice is sufficient under the notice provision of Rule 404(b), United States v. Ojeikere, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004); see Tavarez, 2007 WL 2963709, at *2, and the Second Circuit has held that disclosure with even less notice than that may be sufficient. See United States v. Valenti, 60 F.3d 941 (2d Cir. 1995). Requiring substantially more than ten days' notice would be inappropriate because the evidence that the Government wishes to offer may well change as the proof and possible defenses crystallize. See United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).

In this case, no trial date has been scheduled, and the Government is still determining what evidence it will seek to introduce at trial pursuant to Rule 404(b). Accordingly, the Government respectfully submits that it will provide 404(b) notice at least ten working days (two weeks) before trial. Such timely disclosure will enable the defense an

15

opportunity to challenge the admission of any such evidence and the Court to make appropriate findings.

**F.     <u>Brady Material</u>**

The defendant also seeks to have the Government provide early production of <u>Brady</u> material.  Pursuant to the Due Process Clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). Favorable evidence includes evidence that tends to exculpate the accused, <u>see</u> <u>id.</u>, as well as evidence that is useful to impeach the credibility of a Government witness.  <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972).  As the Court of Appeals has explained, <u>Brady</u> and <u>Giglio</u> material must be provided by the Government  "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made."  <u>United States v. Coppa (In re United States)</u>, 367 F.3d 122, 132, 142 (2d Cir. 2001).  Thus, due process requires only that <u>Brady</u> material be disclosed "in time for effective use at trial."  <u>Id.</u> (citing cases).  The Government is not at this time aware of any <u>Brady</u> material in this case, but recognizes its continuing obligation to disclose all such material. With respect to impeachment material for Government witnesses, the Government will provide such material the Friday of the week before trial, which, as discussed below, is sufficient.  As the Government has, in good-faith, asserted that it has met, and will continue to meet its obligations, there is no reason to compel disclosure of <u>Brady</u> material at this time. <u>See</u> <u>Perez</u>, 940 F. Supp. at 553.  The Court should therefore deny the defendant's request for early production of <u>Brady</u> material.

16

G.       **Witness Statements**

The defendant asks the Court to direct the Government to provide prior statements of its witnesses at least 30 days prior to jury selection.  This request should be denied.

The law is clear that the Government is under no obligation under the Jencks Act, 18 U.S.C. § 3500 <u>et seq</u>., to produce prior statements of its witnesses until <u>after</u> each has testified on direct examination.  The Jencks Act provides in pertinent part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500.

Moreover, the district court lacks the power to mandate early production of Jencks Act material.  <u>In re United States</u>, 834 F.2d at 287 (holding that district court has no inherent power to modify the provisions of the Jencks Act); <u>United States v. Percevault</u>, 490 F. 2d 126, 132-32 (2d Cir. 1974) (holding that district court may not order pre-trial production of Section <u>3500</u> material over the Government's objections); <u>see Tavarez,</u> 2007 WL 2963709, at *1.  Nevertheless, in order to avoid any delay in the trial, the Government will produce Jencks Act material the Friday of the week before trial.  This will allow defense counsel adequate time to prepare for cross-examination of Government witnesses at trial.

17

H.    <u>Witness List</u>

   The defendant also requests that the Court order the Government to provide a witness list.  In particular, the defendant asks the Court to order the Government to provide (1) a list of witnesses it intends to call at trial and (2) a list disclosing any other witnesses to the crime whom the Government does not intend to call at trial.  Both requests should be denied because they have no foundation in law.

   As the Second Circuit has explained, Rule 16 "does not require the Government to furnish the names and addresses of its witnesses."  <u>United States v. Bejasa</u>, 904 F.2d 137, 139 (2d Cir. 1990).  Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses.  <u>See</u> <u>United States v. Alessi</u>, 638 F.2d 466, 481 (2d Cir. 1980) ("[T]he prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him.") (citing <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977)).  Moreover, <u>United States v. Cannone</u>, 528 F.2d 296 (2d Cir. 1975), makes clear that a defendant is entitled to disclosure of the Government's witnesses only if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case."  <u>Id.</u> at 301.  A mere "abstract conclusory claim that such disclosure [is] necessary to [the] proper preparation for trial" is insufficient.  <u>Id.</u> at 301-02 (abuse of discretion for the district court to grant defense motion for a witness list supported by only general statement of need); <u>see also</u> <u>United States v. Biaggi</u>, 675 F. Supp. 790, 810-11 (S.D.N.Y. 1987).

   The law is clear that, "absent some particularized showing of need, the defendant is not entitled to lists of government witnesses . . . ."  <u>United States v. Wilson</u>, 565 F. Supp.

1416, 1438 (S.D.N.Y. 1983), overruled on other grounds, United States v. Reed, 773 F.2d 477

(2d Cir. 1985).  Because this "heavy burden," United States v. Alvalle, No. 85 Cr. 419 (JFK),

1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), can rarely be met, requests for witness lists are

routinely denied in this District.  See, e.g., Russo, 483 F. Supp. 2d at 309; United States v.

Dewar, 489 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2007); Ojeikere, 299 F. Supp. 2d at 258; United

States v. Giffen, 379 F. Supp. 2d 337, 345 (S.D.N.Y. 2004).

        Here, Lemus has not demonstrated a particularized need for a witness list, but

has merely made a conclusory assertion that disclosure is necessary because "an issue exists as

to what acts were committed by defendant and what acts were committed by the confidential

source."  (Br. at 12).  On this theory, any defendant asserting that he did not commit the crime

with which he is charged would be entitled to a witness list.  Not surprisingly, Lemus does not

cite a single case from this Circuit in support of his claim.

        The defendant also has no entitlement to a list of non-testifying witnesses.

Indeed, the request for such a list improperly intrudes upon the Government's investigation and

seeks information that is expressly exempted from discovery under Rule 16(a)(2).  To the extent

the defendant's request is based on speculation that the Government has interviewed a witness

who has provided exculpatory statements, the Government is cognizant of its Brady obligations

and certainly recognizes that if a witness has provided exculpatory information, the Government

cannot shield that information from disclosure merely by choosing not to call the witness at

trial.

I.    **Impeachment Material**

The defendant asks the Court to order the Government to provide impeachment material regarding the confidential informant and the other witnesses it intends to call at trial. The Government will provide impeachment material for all testifying witnesses, including the informant, at the same time it provides Jencks Act material.

Courts in this District have repeatedly refused to compel disclosure of impeachment or Giglio material well in advance of trial. See, e.g., Dewar, 489 F. Supp. 2d at 356; United States v. McDuffie, No. 01 Cr. 808 (NRB), 2002 WL 654136, at *1 (S.D.N.Y. Apr. 18, 2002); United States v Carrington, No. 02 Cr. 897 (LTS), 2002 WL 31496199, at *3-4 (S.D.N.Y. Nov. 7, 2002). In United States v. Coppa, the Second Circuit held that the Government is not required to produce Giglio material until it produces "3500 material" pursuant to the Jencks Act, so long as the Government provides the Giglio material in time for its effective use at trial. 267 F.3d 132, 145-46 (2d Cir. 2001); see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Greyling, No. 00 Cr. 631 (RCC), 2002 WL 424655, at *2 (S.D.N.Y. Mar. 18, 2002) (holding that the production of Giglio material by the Wednesday before the week in which a witness will testify is appropriate); United States v. Gallo, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *7-*8 (S.D.N.Y. Jan. 11, 1999) (denying defendants' motions to require the early production of Giglio and 3500 material based on Government's representations that it would provide the information sufficiently in advance of each witness's testimony to allow adequate time to prepare for cross-examination); United States v. Mejia, No. 98 Cr. 4, 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5,

1998) (denying defendant's motion to compel all impeachment material under <u>Giglio</u> based on the Government's representations that it would make such information available at the time that it provides Section 3500 material).

       The Government will adhere to its customary practice of producing impeachment material at the same time as Jencks Act material – in this case, the Friday of the week before trial. This will allow defense counsel adequate time to prepare for cross-examination of Government witnesses at trial.

**J.**    **<u>Expert Summaries</u>**

       The defendant also seeks an order requiring the Government to provide summaries of any expert testimony it will offer at trial. The Government has not yet determined whether it will call an expert witness at trial. The Government is cognizant of its obligations under Rule 16(a)(1)(G), however, and will notify the defendant in a timely fashion of any expert it intends to call at trial and will provide the defendant at that time with a summary of the expert's opinion and qualifications. <u>See</u> Fed. R. Crim. P. 16, Application Note (1993) ("Although no specific timing requirements are included [in the expert disclosure provision], it is expected that the parties will make their requests and disclosures in a timely fashion.")

**K.**    **<u>Results of Examinations or Tests</u>**

       The defendant also asks the Court to order the Government to provide the results or reports of any physical or mental examination and of any scientific test or experiment. The Government is not aware of any physical or mental examination or of any scientific test or experiment that has been performed in connection with this matter. The Government

recognizes its obligations under Rule 16(a)(1)(F), however, and will comply with the Rule's

disclosure obligations if it conducts any such examination, test or experiment.

**L.     Material Seized From or Belonging to the Defendant**

        Pursuant to Rule 16(a)(1)(E), the defendant is entitled to inspect any items that

were seized from the defendant or that belong to him.  The Government has already provided a

list of information retrieved from the defendant's cellular phone at the time of his arrest, but is

not aware of any other items in its possession that were seized from the defendant or that belong

to the defendant.  To the extent the Government learns of additional items subject to discovery

under this provision, those items will promptly be made available to the defendant for his

inspection.

**III.     THE COURT SHOULD DENY THE DEFENDANT'S MOTIONS TO SUPPRESS
HIS POST-ARREST STATEMENTS**

        The defendant seeks suppression of his post-arrest statements, or a hearing, and

sets forth four purported bases for such relief: (1) the statements resulted from a warrantless

arrest lacking probable cause; (2) the defendant was not advised of his <u>Miranda</u> rights; (3)

agents did not stop questioning the defendant or advise him that a lawyer contacted by a friend

of the defendant called the police station to inquire about his status; and (4) the defendant was

in custody for more than six hours before being presented before a Magistrate Judge. The Court

should deny the defendant's motion to suppress his statements without a hearing.

        As an initial matter, the defendant has failed to submit an affidavit of anyone

with personal knowledge of the facts and circumstances surrounding his statements.  Instead, he

seeks to rely solely on an affidavit of his attorney based on information and belief.  It is well

settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of

demonstrating that there are disputed issues of fact that would justify an evidentiary hearing.

See United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).  "[A]n evidentiary hearing

on a motion to suppress ordinarily is required if the moving papers are sufficiently definite,

specific, detailed, and nonconjectural to enable the court to conclude that contested issues of

fact . . . are in question."  United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).  However, in

order to create a factual dispute in this context, a defendant must submit sworn factual

allegations from a person with personal knowledge of the underlying facts.  Gillette, 383 F.2d at

848-49.  An affidavit of defense counsel without such personal knowledge will not suffice.

Gillette, 383 F.2d at 848-49; see United States v. Mason, No. 06 Cr. 80 (NRB), 2007 WL

541653, at *2 (S.D.N.Y. Feb. 16, 2007) ("An affidavit of defense counsel who does not have

personal knowledge of the facts and circumstances surrounding the events at issue is an

insufficient basis for an evidentiary hearing."); United States v. Shaw, 260 F. Supp. 2d 567, 570

(E.D.N.Y. 2003) ("Courts have made clear that attorney affidavits are insufficient to warrant a

hearing."); United States v. Roberts, No. 01 Cr. 410 (RWS), 2001 WL 1602123, at *10-11

(S.D.N.Y. Dec. 14, 2001) ("This Circuit has repeatedly made clear that attorney affidavits are

insufficient to trigger a hearing, and that a defendant is required to first allege facts which, if

proved, would require the granting of relief."); United States v. Ahmad, 992 F. Supp. 682, 685

(S.D.N.Y. 1998).  As the court explained in United States v. Garcia:

>                 Experience shows that unless such serious charges are initiated
>                 upon the sworn statement of persons having personal knowledge of
>                 the facts, a great deal of time of the parties and the Court is
>                 frequently wasted upon unnecessary, expensive and protracted
>                 suppression hearings, all for the reason that the attorney

> demanding suppression merely upon his own say-so often
> discovers only at the hearing that he had been misled by unsworn
> misrepresentations of his clients, which they would be unwilling to
> swear to in an affidavit, particularly if they were questioned
> closely by their counsel and warned of the consequences of
> perjury.

272 F. Supp. 286, 289 (S.D.N.Y. 1976).

Not surprisingly, courts in this Circuit have routinely denied suppression motions

without granting an evidentiary hearing where, as here, the motion was based only on an

affidavit of defense counsel. See, e.g., Ahmad, 992 F. Supp. at 685; Mason, 2007 WL 541653,

at *2; United States v. Thornton, No. 06 Cr. 59 (AWT), 2006 WL 3332985, at *3 (D. Conn.

Nov. 16, 2006); Roberts, 2001 WL 1602123, at *10-11; Shaw, 260 F. Supp. 2d at 570; see also

Gillette, 383 F.2d at 848-49 (upholding denial of evidentiary hearing where motion was based

on affidavit of attorney without personal knowledge).

**A.      The Defendant's Arrest Was Supported by Probable Cause And No Hearing Is Warranted**

The defendant's first claimed basis for suppression is that his statement was the

result of a warrantless arrest. Thus, the narrow issue presented here is whether arresting officers

had probable cause, at the time of the arrest, to believe that Lemus had committed an offense.

See United States v. Monsalve, 728 F. Supp. 212, 216 (S.D.N.Y. 1990). The Court should deny

the motion because the allegations in the Complaint known to the officers at the time of the

defendant's arrest undoubtedly establish probable cause.

The Second Circuit has held that law enforcement officials have probable cause

to arrest absent a warrant "when the authorities have knowledge or reasonably trustworthy

information sufficient to warrant a person of reasonable caution in the belief that an offense has

been committed by the person to be arrested." <u>Boyd v. City of New York</u>, 336 F.3d 72, 75-76

(2d Cir. 2003); <u>see</u> <u>United States v. Patrick</u>, 899 F.2d 169, 171 (2d Cir. 1990) (citing <u>Brinegar v.

United States</u>, 338 U.S. 160, 175-76 (1949)); <u>Illinois v. Gates</u>, 462 U.S. 213, 230-32 (1983);

<u>United States v. Fisher</u>, 702 F.2d 372, 375 (2d Cir. 1983).  "Probable cause does not require

absolute certainty," <u>Boyd</u>, 336 F.3d at 76, or "an actual showing of [criminal] activity."  <u>United

States v. Bakhtiari</u>, 913 F.2d 1053, 1062 (2d Cir. 1990).  Rather, probable cause requires "only

a probability or substantial chance of criminal activity."  <u>Id.</u> at 1062.  Thus, it is "not necessary

to make a prima facie showing of criminal activity or to demonstrate that it is more probable

than not that a crime has been or is being committed." <u>United States v. Gonzales</u>, 864 F. Supp.

375, 377 (S.D.N.Y. 1994) (quoting <u>United Stated v. Cruz</u>, 834 F.2d 47, 50 (2d Cir. 1987)).

        Probable cause is a "fluid concept-turning on the assessment of probabilities in

particular factual contexts," rather than a "neat legal standard." <u>Illinois v. Gates</u>, 462 U.S. at

232; <u>Brinegar v. United States</u>, 338 U.S. 160 at 176; <u>United States v. Taormina</u>, 1998 WL

702341, at *2 (S.D.N.Y. Oct. 8, 1998).  The evidence gathered must be viewed and weighed

"not in terms of library analysis by scholars, but as understood by those versed in the field of

law enforcement." <u>Illinois v. Gates</u>, 462 U.S. at 231.

        Based on the facts known to arresting officers at the time of Lemus's arrest, as

set forth in the Complaint, there was probable cause to arrest Lemus.  According to the sworn

Complaint, arresting officers were aware of the following, among other things: (1) on February

10, 2007, a confidential informant had spoken to Lemus about purchasing fraudulent

identification documents (Compl. ¶  2); (2) law enforcement officers, with the CI's consent,

recorded a phone call on February 10, 2007 between Lemus and the CI concerning a purchase

of false identification documents the following day, and during that call, the CI and the

defendant discussed the price of the false identification documents and the number of

photographs that would be needed to produce the documents (Compl. ¶ 2); (3) the next day,

after providing the CI with a recording device and United States currency, officers observed the

CI meet Lemus in Orangeburg, New York, drive with Lemus to Queens, and return with Lemus

to Orangeburg (Compl. ¶ 3); (4) shortly thereafter, the agents recovered from the CI two false

identification documents, and the CI advised that Lemus had provided those false documents to

him (Compl. ¶ 3) ; (4) on March 1, 2007, the CI advised officers that he had spoken to Lemus

and asked Lemus to obtain ten additional false identification documents for him (Compl. ¶ 4);

(5) on March 3, 2007, after officers equipped the CI with a recording device and provided him

with United States currency, they observed the CI meet with Lemus in Spring Valley, New

York, drive with Lemus to Queens, and then drop Lemus off in Orangeburg (Compl. ¶ 5); (6)

shortly thereafter, the officers recovered from the CI ten false identification documents, which

the CI stated he had received from Lemus (Compl. ¶ 5).  This evidence, taken as a whole, was

clearly sufficient "to warrant a person of reasonable caution in the belief that an offense had

been committed by the person to be arrested."[5] Gonzalez, 835 F.2d at 450-51 (citing Draper v.

United States, 358 U.S. 307, 313 (1959)).

       The fact that the arresting officers relied in part on information provided by an

informant does not vitiate the existence of probable cause.  Indeed, even information given by

---

[5] These facts do not represent all of the facts known to the officers at the time of the arrest, but only those facts that are set forth in the Complaint.  Moreover, these facts do not include Lemus's post-arrest statement, which was included in the Complaint, in which Lemus acknowledged that he had purchased false identification documents for people.  (Compl. ¶ 6).

an untested informant can provide the basis for probable cause when, as in this case, that

information is corroborated by the independent observations of the arresting officers. See

United States v. Gaviria, 805 F.2d 1108, 1115 (2d Cir. 1986); see also Draper, 358 U.S. at 318

(finding probable cause to arrest and search defendant after informant told agents that defendant

would be returning on a train with heroin in a bag, and agents witnessed person matching

description); Gonzalez, 825 F.2d at 451 (finding probable cause to arrest and search after, as

predicted by the informant, the defendant met another person and drove to an airport to meet a

third person to pick up drugs); United States v. Ruiz, No. 94 Cr. 392 (LAP), 1994 WL 613294

(S.D.N.Y. Nov. 7, 1994).  The Complaint makes clear, on its face, that information provided by

the CI was corroborated by the officers' independent observations on February 11 and March 3.

Moreover, courts have recognized that an informant who provides information to law

enforcement officers face-to-face "must, as a general matter, be thought more reliable than an

anonymous telephone tipster, for the former runs the greater risk that he may be held

accountable if his information proves false."  United States v. Salazar, 945 F.2d 47, 51 (2d Cir.

1991).  Here, the Complaint leaves no question that the officers met face-to-face with the CI, as

they equipped him with a recording device and provided him with money to use to purchase the

false identification documents.  Finally, the Complaint makes clear that the CI knew that his

meetings with the defendant were being monitored and recorded by officers, further reducing (if

not eliminating) any possibility of his providing false information regarding those meetings.

　　　　　Accordingly, because the Complaint makes clear that probable cause existed

based on what officers knew at the time of the arrest, the defendant's motion should be denied.

**B.**     **The Defendant's Claim that Agents Failed to Provide Him With Miranda Warnings Does Not Warrant Suppression or a Hearing**

The Court should deny without a hearing the defendant's motion to suppress his statements based on the agents' purported failure to provide <u>Miranda</u> warnings because the defendant has not submitted an affidavit in support of this claim.  As discussed above, a motion to suppress must be supported by an affidavit of someone with personal knowledge, and an attorney's affidavit will not suffice.  <u>Gillette</u>, 383 F.2d 843, 848-49.  Accordingly, "[c]ourts in this District have routinely denied motions to suppress statements made to police allegedly in violation of <u>Miranda</u> rights when the defendant fails to submit an affidavit from an individual with personal knowledge about the circumstances of the defendant's statement." <u>United States v. Gustus</u>, No. 02 Cr. 888 (LTS), 2002 WL 31260019, *1 (S.D.N.Y. Oct. 8, 2002); <u>see, e.g.,</u> <u>Ahmad</u>, 992 F. Supp. at 685; <u>Mason</u>, 2007 WL 541653, at *3; <u>Roberts</u>, 2001 WL 1602123, at *10-11; <u>United States v. Cortez</u>, No. 05 Cr. 55 (DAS), 2005 WL 2861587, at *3 (S.D.N.Y. Oct. 27, 2005).

**C.**     **The Defendant's Claim that An Unidentified Attorney Called the Police Department on Lemus's Behalf Provides No Basis for Suppression or a Hearing**

The defendant also moves to suppress his statements based on an allegation that an attorney – whom the defendant fails to identify – contacted the Spring Valley Police Department on Lemus's behalf.  The defendant, through his attorney's affidavit, alleges that: at approximately 4:00 p.m. on the day of his arrest, Lemus contacted "a friend" who, in turn, contacted "an attorney"; the unidentified attorney then called the Spring Valley Police Department to ask whether Lemus was in custody and whether he could speak to Lemus; and that someone at the Police Department stated that he could neither confirm nor deny that Lemus

28

was in custody, but that the attorney should show up at 8:00 a.m. the following day if he wanted

to see Lemus.  See Riley Aff. ¶ 9.   This branch of the motion fails for two independent reasons.

First, the claim does not appear to be supported by an affidavit of anyone with personal

knowledge.  Second, even if the allegations set forth in the attorney's affidavit were true, they

would not give rise to suppression.  Therefore, the Court should deny this portion of the motion

without a hearing.

       The affidavit of defense counsel in support of the defendant's motion fails to

provide such basic facts as the identity of the attorney who purportedly called the police station

on Lemus's behalf.  The veracity of the allegation must be questioned in light of the fact that no

private attorney appeared on Lemus's behalf when he was presented in federal court the

following day.  Unless the affiant is himself the unidentified attorney, the affidavit of defense

counsel is not based on personal knowledge of the underlying facts, and the motion must fail for

that reason alone. See Gillette, 383 F.2d at 848-49.

       In any event, even if the defendant cured this defect by submitting a sworn

affidavit of someone with personal knowledge (i.e., the unidentified attorney), a hearing would

be unnecessary because the allegations, even if proven true, provide no basis for suppression.

See Moran v. Burbine, 475  U.S. 412 (1986).  In Moran, the defendant confessed to a murder

during a post-arrest interrogation.  Although he never requested an attorney during the

interrogation, while he was in custody, his sister attempted to retain a lawyer to represent him.

The attorney telephoned the police station and was assured that the defendant would not be

questioned further until the following day.  However, the police continued to interrogate him

later that evening and it was during that interrogation that he made inculpatory statements.  The

29

question before the Court was whether (1) the conduct of the police or (2) the defendant's ignorance of the attorney's efforts to reach him required suppression of his inculpatory statements. The Court held that neither of these circumstances warranted suppression. In the instant case, unlike in <u>Moran</u>, it is not even clear that questioning continued after the alleged call. Yet, <u>Moran</u> makes clear that suppression of the defendant's statements would not be warranted even if the questioning had continued after the purported phone call.

   In fact, the Second Circuit has extended the holding of <u>Moran</u> to the situation where an attorney, unbeknownst to the defendant, expressly instructs the Government to cease its interrogation of the defendant, which is not even alleged here. <u>United States v. Scarpa</u>, 897 F.2d 63, 68-69 (2d Cir. 1990) (upholding district court's denial of a motion to suppress despite the fact that an attorney, who had been retained by the suspect's stepmother without the suspect's knowledge, directed the prosecutor to cease interrogation before the statements were made); <u>see</u> <u>United States v. Palmeri,</u> No. 97 Cr. 356 (JG), 1998 WL 765138, *2-3 (E.D.N.Y. April 20, 1998) (denying motion to suppress even though the suspect himself had retained an attorney and the attorney requested -- outside the suspect's presence -- that the police cease the interrogation); <u>see also</u> <u>United States v. Ivanson</u>, No. 05 Cr. 113 (DLI), 2007 WL 680782, *4-7 (E.D.N.Y. Mar. 2, 2007) (denying motion to suppress even though defendant attempted to reach an attorney and his attorney left a message with the interrogating officer instructing the officer not to question the defendant); <u>Gill v. City of New York</u>, No. 02 Civ. 10201 (RWS), 2004 WL 816449, *9-10 (S.D.N.Y. Apr. 16, 2004) (granting defendant summary judgment on plaintiff's Section 1983 claims where police continued to question him even though an attorney retained by his mother on his behalf had contacted the police and told them not to speak to him). Thus,

even if defendant's allegations were supported by an affidavit of someone with personal

knowledge, they would provide no basis for suppression or for a hearing.

**D.     Any Delay Between the Defendant's Arrest and Presentment Before a Magistrate Provides No Basis for Suppression or a Hearing**

The defendant's final ground on which he seeks suppression of his post-arrest

statements is his claim that 18 U.S.C. Section 3501(c) requires suppression because he was in

custody for more than six hours before being produced before a Magistrate Judge.  This motion

also should be denied.  First, as is the case with his other grounds for suppression, the defendant

has not submitted an affidavit of someone with personal knowledge of the underlying facts.

Second, the statute makes clear that regardless of the length of the delay between arrest and

presentment, any such delay cannot provide a basis for suppression if the defendant's statement

was made within the first six hours following arrest.  Here, the defendant's own allegations

establish that the statements were made within the first six hours.  Third, even if the statements

were made after the first six hours, the defendant has presented no facts to support a conclusion

that the delay was unreasonable.

Section 3501 governs the admissibility of a defendants' statements in federal

criminal prosecutions.  It gives the Court discretion to suppress statements due to unreasonable

delay between arrest and presentment where the defendant's statements were made more than

six hours after the arrest.  Where the statements were made within the first six hours, however,

the Court may not suppress the statements on the basis of delay.  Pursuant to the so-called "safe

harbor" provision of Section 3501(c), United States v. Alvarez-Sanchez, 511 U.S. 350, 355, 358

(1994), a confession shall not be inadmissible solely because of delay in bringing the defendant

before a judicial officer if "such confession was made or given by such person within six hours immediately following his arrest or other detention."  18 U.S.C. § 3501(c); see United States v. Toney, 579 F. Supp. 652, 656 (S.D.N.Y. 1984) ("A statement obtained within six hours of arrest is not inadmissible solely because of pre-arraignment delay, under 18 U.S.C. § 3501(c)."); United States v. Ramos, 605 F. Supp. 1057 (S.D.N.Y. 1985).  Here, the defendant's statements were made at the Stony Point Police Station, and the affidavit of the defendant's attorney alleges that the defendant was there for under six hours following his arrest.  See Riley Aff. ¶¶ 7-8 (alleging that agents arrived at the defendant's workplace at 10:30 a.m. and left the Stony Point Police Station at 3:45 p.m.).

Moreover, even if the defendant had made statements beyond the six-hour period, the Court would not be required to suppress his statements.  "[A] lapse of hours between arrest and arraignment, standing alone, does not require the exclusion of a statement made during the period."  United States v. Rubio, 709 F.2d 146 (2d Cir. 1983).  Under Section 3501(c), a district court has the discretion to suppress a confession if the delay between arrest and presentment is greater than six hours and the delay is found by the court to be unreasonable under the circumstances.  United States v. Fullwood, 86 F.3d 27, 31 (2d Cir. 1996) (citing United States v. Perez, 733 F.2d 1026, 1030 (2d Cir. 1984)).  Where there has been a delay beyond six hours, a court should look at how the government agents used the time before presentment, in particular, whether they employed coercive tactics to obtain a confession. Rubio, 709 F.2d at 153.

To the extent the defendant made statements beyond the first six hours, which he does not allege, he has not alleged any facts to support a claim that the period of time between

32

arrest and presentment was unreasonable. The defendant was interviewed at the Stony Point Police Department, transported to the Spring Valley Police Department to be housed overnight, and brought to court the next morning. There is no contention that he made any statement that next morning or after any extended period of time that might implicate the concern that lengthy detention could have a coercive effect. Nor is there is any allegation that agents used coercive tactics before the defendant's presentment. Finally, most of the period beyond the first six hours was attributable to overnight lodging, processing, and transit, which courts in this Circuit routinely have found to be reasonable grounds for delay. See United States v. Ospina, No. 99 Cr. 73 (AGS), 2000 WL 37997, at *2 (S.D.N.Y. Jan.18, 2000) (finding delay reasonable where defendant was arrested by DEA Agents at 2:00 p.m., driven around for several hours by agents who were searching for other defendants, brought to a precinct for processing at 5:00 p.m., housed overnight at the Manhattan Correctional Center and then questioned the following morning); Rubio, 709 F.2d at 153-54 (holding that delay was reasonable, though statement was given nearly two days after weekend arrest, where the hours between arrest and arraignment were spent in processing, routine questioning, and overnight lodging in the Manhattan Correctional Center); United States v. Collins, 462 F.2d 792, 795-96 (2d Cir. 1972) (holding that 21 hours between arrest and confession did not constitute "unnecessary delay" when majority of time was spent in transit, routine processing, and overnight lodging); United States v. Gomez, 758 F. Supp. 145, 152 (S.D.N.Y. 1991) (holding that delay between arrest and arraignment did not bar statement when delay was due to routine processing and overnight lodging).

33

**IV.    THE COURT SHOULD DENY THE DEFENDANT'S MOTION FOR SUPPRESSION OF ANY IDENTIFICATION OF THE DEFENDANT OR FOR A HEARING**

        The defendant moves for the suppression of any identification of the defendant or for a hearing on the suggestiveness of any identification of the defendant.  There is no basis, however, for suppression or for a hearing on the issue.

        There is no per se rule requiring a hearing on the issue of suggestiveness. Watkins v. Sowders, 449 U.S. 341, 346-47 (1981).  Instead, the defendant is required to make a threshold showing of suggestiveness before the Court will holding a hearing.  United States v. Hamideh, No. 00 Cr. 950 (NRB), 2001 WL 11071 (S.D.N.Y. Jan. 3, 2001); see United States v. Leonardi, 623 F.2d 746, 755 (2d Cir. 1980) (holding that trial court was correct in not requiring pretrial testimony of identifying witnesses where there was no threshold showing of suggestiveness); United States v. Dames, 380 F. Supp. 2d 270, 276-77 (S.D.N.Y. 2005); United States v. Berganza, No. 03 Cr. 987 (DAB), 2005 WL 372045, *10 (S.D.N.Y. 2005); United States v. Ruggiero, 824 F. Supp. 379, 396 (S.D.N.Y. 1993).  Here, the defendant has made no such showing.  As part of its discovery, the Government provided a photo array containing six photographs, including a photograph of Lemus.  The array is not suggestive on its face, and the defendant does not allege otherwise.  In fact, the defendant alleges nothing that would support a finding of suggestiveness. Where, as here, the defendant does not challenge the array itself, and merely speculates in conclusory fashion that the procedures involved in using the photo array might have been suggestive, the defendant is not entitled to a hearing. United States v. Wei, 862 F. Supp. 1129, 1133 (S.D.N.Y. 1994); see Hamideh, 2001 WL 11071, at *1.  Any issues

concerning the reliability of witnesses' identifications can be properly raised at trial on cross-examination.  <u>See</u> <u>Wei</u>, 862 F. Supp. at 1132-33.

**V.      THE COURT SHOULD DENY THE DEFENDANT'S MOTION FOR AN AUDIBILITY HEARING**

        The defendant also moves for an audibility hearing to address the compact disc provided by the Government.  The disc contains three recordings of conversations in Spanish: (1) a recorded phone call between the CI and the defendant on February 10, 2007; (2) a recording of the transaction on February 11, 2007; and (3) a recording of the transaction on March 3, 2007.  Although each of the latter two recordings are several hours long, the defendant has not pointed to any specific portions of any of the recordings that he believes to be inaudible.  Nor has he even alleged, much less attempted to demonstrate, as he is required to do, that any unintelligible portions are so substantial as to render the recording as a whole untrustworthy.  The Court therefore should deny the defendant's motion for an audibility hearing, at least until the defendant identifies those portions he believes are inaudible and explains why he believes those portions render the recording as a whole untrustworthy.[6]

        The Second Circuit has expressed its "clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility."  <u>United States v. Arango-Correa</u>, 851 F.2d 54, 58 (2d Cir 1988) (citing <u>United States v. Bryant</u>, 480 F.2d 785, 790 (2d Cir. 1973)).  Indeed, "[t]he mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape."  <u>Arango-Correa</u>, 851 F.2d at 58; <u>see also</u> <u>Bryant</u>, 480

---

        [6]      The Government is in the process of preparing English transcripts of the recordings.  To the extent the Court determines that a hearing or <u>in camera</u> review of the recordings is warranted, the Government requests that the Court defer such a review until the transcripts are available.

F.2d at 790 (finding tapes admissible even though "some parts of the tape were totally

inaudible" and "[o]ther parts were so garbled that only some jurors were able to understand

what was being said").  As one court has explained, to exclude a recording simply because

portions of it are inaudible or incomplete, without a positive showing of deception, "is no more

valid" than to exclude the testimony of a witness because of his or her "failure to overhear all of

a conversation."  Monroe v. United States, 234 F.2d 49, 54-55 (D.C. Cir. 1956) (cited with

approval in 1 Weinstein's Evidence ¶ 106[01], at 106-12 (1986)).

       Thus, a recording is admissible unless the unintelligible portions are so

substantial as to render the recording as a whole untrustworthy.  See Arango-Correa, 851 F.2d at

58 (citing Bryant, 480 F.2d at 790 (internal citation omitted)).  In deciding whether a tape

recording should be admitted, a court must "focus[] on the probative nature of the tapes, and not

merely their audibility."  Arrango-Correa 851 F.2d at 58-59; see also Bryant, 480 F.2d at 790

("Nor can we say that the inaudible parts are so substantial as to render the remainder more

misleading than probative"); United States v. Botero, No. 93 Cr. 274 (JFK), 1993 WL 427027,

at *2 (S.D.N.Y. Oct. 18, 1993) ("If the Court concludes that the probative value of [a recording]

outweighs its potential to mislead, the fact that portions of it are inaudible or unintelligible goes

to 'weight, not . . . admissibility.'" (citation omitted)).

       Moreover, any objection to the audibility of a transcribed conversation or

accuracy of a transcript must be specific.  Gutierrez-Flores v. United States, No. 97 Civ. 5677

(CSH), 1999 WL 147735, at *9 (S.D.N.Y. Mar. 18, 1999). A defendant cannot simply point to

an entire recording and allege that it is inaudible.  Instead, the defendant must point to specific

portions of a recording, or of the transcript of the recording, and allege that the specific portion is so unintelligible as to render the recording misleading.  Id.

          In this case, the defendant has not even attempted to show that, even if portions of the recorded conversations are inaudible, the probative value of the audible portions is outweighed by the potential of the recording to mislead the jury.  See Arrango-Correa, 851 F.2d at 58-59; Bryant, 480 F.2d at 790; Botero, 1993 WL 427027, at *2.  The Government submits that the defendant cannot meet this rigorous standard in connection with any of the recordings in this case.  Each of the recordings on the compact disc provided to the defendant is probative; one of the recordings is of a telephone conversation between the CI and defendant the day before one of the transactions took place, and the remaining two recordings are of monitored meetings between the defendant and the CI during the course of the overt acts identified in the Indictment.  The latter two recordings were made via a secreted recording device, and part of the recorded meetings took place in a vehicle and on a public street, so it is not surprising that they contain sections which are difficult to hear due to background traffic and noise.  However, at trial, the jury will be able to listen to the recording for themselves, with the aid of a transcript in which inaudible portions will be marked, and to make factual determinations about the evidence.  The defendant can argue to the jury about what weight, if any, the jury should give this audio evidence.  See, e.g., Arrango-Correa, 851 F.2d at 54 (holding that district court's decision to admit tapes was not erroneous in part because "the transcript, even with the inaudible portions marked in, was sufficiently clear that the jury could 'come to some conclusion as to what was going on'" during the recorded meeting) (internal citation omitted).

37

In addition, the confidential informant, a primary witness to the recording, will testify at trial. The defendant will thus have the opportunity to cross-examine the informant about the evidence on the recording. Given the defendant's ability to cross-examine a witness who participated in the conversations at issue and to make arguments to the jury about the content of the recordings, there is especially no reason that the Court should order the extreme remedy of exclusion here. See Monroe, 234 F.2d at 55 ("Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, the recording is admissible, and the decision should be left to the sound discretion of the trial judge. This is especially so when the witness who heard the statements recorded also testifies, so that the recordings give independent support to his testimony."); see also Bryant, 480 F.2d at 791.

Thus, the Court should deny the defendant's motion for an audibility hearing. At a minimum, before the Court conducts any hearing or in camera review of the recordings, the Government submits that as in United States v. Siddiqi, No. 06 Cr. 377 (SWK), 2007 WL 2873924, *3 (S.D.N.Y. Oct. 3, 2007), the Court should require the defendant to (1) specifically identify those portions that he contends are unintelligible, (2) "explain why the unintelligible portions of the recording, as identified by the defendant, are so substantial as to render the recordings as a whole untrustworthy," and (3) "if appropriate, elucidate why the probative value of the recording is outweighed by its tendency to mislead the jury." Id.

VI.    **THE INDICTMENT PROPERLY ALLEGES VENUE**

"The venue requirement serves to shield a federal defendant from 'the unfairness and hardship' of prosecution 'in a remote place.'" United States v. Rommy, _ F.3d _, 2007 WL 324813, at *8 (2d Cir. Nov. 5, 2007) (quoting United States v. Cores, 356 U.S. 405, 407

(1958)).  At trial, the Government bears the burden of proving that venue exists.  See United

States v. Naranjo, 14 F.3d 145, 146 (2d Cir.1994).  To prove venue, the prosecution must show

by a preponderance of the evidence that "any part of the crime was committed within the

district."  United States v. Potamitis, 739 F.2d 784, 791 (2d Cir. 1984).  Where, as here, the

defendant is charged with a conspiracy, "venue may lie in any district in which the conspiracy

was formed or in any district in which a conspirator committed an overt act in furtherance of the

criminal scheme."  Rommy, 2007 WL 324813, at *9; see Naranjo, 14 F.3d at 146.

        Where, as here, venue is challenged on a pretrial motion to dismiss, the

Government's burden is limited to showing that the indictment alleges facts sufficient to support

venue.  United States v. Peterson, 357 F. Supp. 2d 748 (S.D.N.Y. 2005); see United States v.

Szur, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998); United States v.

Rodriguez, 734 F. Supp. 116, 127-28 (S.D.N.Y. 1990) (denying motion to dismiss indictment

for lack of proper venue in light of allegations in indictment which, if established at trial, would

suffice to establish venue); United States v. Korolkov, 870 F. Supp. 60, 63-64 (S.D.N.Y. 1994)

(holding that where indictment alleges venue, objection to venue raises factual issue to be

resolved at trial).  "The law of this Circuit is clear that the Government's burden is satisfied with

regard to pleading venue by alleging that criminal conduct occurred within the venue, even if

phrased broadly and without a specific address or other information."  United States v. Bronson,

No. 05 Cr. 714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007); see United States

v. Stein, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006) ("[A]s long as the indictment alleges venue,

a pretrial motion to dismiss based on contrary allegations by the defendant must be denied.");

United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003) ("[T]he indictment,

39

alleging on its face that the offenses occurred 'within the Eastern District of New York and elsewhere,' suffices to sustain it against this pretrial attack on venue." ); Szur, 1998 WL 132942, at *9 ( "[O]n its face, the Indictment alleges that the offense occurred 'in the Southern District of New York and elsewhere,' which is sufficient to resist a motion to dismiss." ).

Here, the Indictment alleges that the charged conspiracy occurred in the "Southern District of New York and elsewhere."  As a matter of pleading, that allegation is sufficient.  Indeed, the defendant has failed to cite a single case where a court has dismissed a charge for lack of venue notwithstanding an allegation in the indictment that the offense took place within the district where the prosecution was brought.

Although the defendant's claim that venue was manufactured by the Government is premature at this stage because the Indictment sufficiently alleges venue, that claim also lacks merit.  Indeed, the defendant's argument that, for purposes of venue, "[t]elephone calls initiated by the Government and its agents are insufficient to manufacture jurisdiction" (Br. at 15) has been squarely rejected by the Second Circuit.  See United States v. Rommy, 2007 WL 324813, at *8 (upholding district court's refusal to give a jury charge on "manufactured venue" and finding that venue was proper in the Southern District of New York based on a phone call placed by an undercover agent from within the District to the defendant in the Netherlands); see also Naranjo, 14 F.3d at 147 (rejecting defendant's claim that the Government "artificially created venue" in the Southern District where all meetings related to the conspiracy occurred in Queens, but a co-conspirator placed calls from Queens to Manhattan); Unites States v. Persico, 520 F. Supp. 96, 102 (E.D.N.Y. 1991) (rejecting defendant's claim that Government manufactured venue where Government procured bogus writs of habeas corpus ad

40

testificandum requiring the defendant's presence in the district; noting that in many undercover

cases, the Government "creates" venue because a Government agent participates in the illegal

transaction).

Although the Second Circuit, in a footnote in <u>United States v. Myers</u>, 692 F.2d

823, 847 n.21 (2d Cir. 1982), left open the possibility of invalidating venue in circumstances

where the "key events occur in one district, but the prosecution, preferring trial elsewhere, lures

a defendant to a distant district for some minor event simply to establish venue," the Second

Circuit recently noted, in a November 2007 opinion, that in the twenty-five years since that

decision, it has never vacated a conviction on the basis of manufactured venue.  <u>Rommy</u>, 2007

WL 324813, at *16.  The court also pointed out that several other federal courts of appeals have

specifically rejected or questioned the doctrine.  <u>Id.</u>  In this case, where the defendant resides in

the Southern District of New York, and drove with the CI on at least two occasions from the

Southern District of New York to Queens in furtherance of the conspiracy, it cannot possibly be

said that he was "lure[d] . . . to a distant district for some minor event simply to establish

venue."  <u>Myers</u>, 692 F.2d at 847 n.21.

## VII. <u>THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON ENTRAPMENT AND OUTRAGEOUS GOVERNMENT CONDUCT</u>

The defendant's claims of entrapment and outrageous Government conduct

appear to be closely intertwined.  In essence, the defendant's claim is that the Government,

through its agents and confidential source, played too great a role in the charged crimes.  There

is no dispute that the Government supplied the names and photographs for the false

identification documents; the Government gave the confidential informant money with which to

purchase the identification documents; and the confidential informant drove the defendant to the place where the false identification documents apparently were produced. The defendant's motion nonetheless should be denied.

At the outset, the Government notes that given the clear evidence of predisposition, the defendant likely will not even qualify for a jury instruction on entrapment, much less prevail on that claim. However, the Court need not reach this issue now because, at most, the defendant's claim of entrapment presents a question of fact for the jury and is not ripe for determination at this stage. The defendant's claim of outrageous Government conduct should also be rejected because the defendant's allegations, even if assumed to be true, do not rise to the level of conduct that would warrant dismissal of the Indictment. Alternatively, the Court should defer its determination of the defendant's claim of outrageous Government conduct for post-trial determination, when the Court will have the benefit of a fully developed record

**A.    The Claim of Entrapment is Premature**

The doctrine of entrapment has two related elements: (1) government inducement of the crime and (2) lack of predisposition on the defendant's part to engage in the criminal conduct. Matthews v. United States, 485 U.S. 58, 63 (1988); United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995); United States v. Harvey, 991 F.2d 981, 992 (2d Cir. 1993). A defendant has the initial burden to present "credible evidence of inducement by a government agent." Salerno, 66 F.3d at 547. Inducement refers to "the Government's initiation of the crime and not the degree of pressure exerted" and is established by "some evidence" of "soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged." United

42

States v. Dunn, 779 F.2d 157, 158, 160 (2d Cir.1985) (internal quotations omitted); accord

United States v. Han, 230 F.3d 560, 564-65 (2d Cir. 2000).

       If the defendant meets his burden of showing the Government induced him to

commit the offense, the Government bears the burden of proving beyond a reasonable doubt

"predisposition on the defendant's part." United States v. Bala, 236 F.3d at 94. A defendant is

predisposed to commit a crime if he is "ready and willing without persuasion to commit the

crime charged and awaiting any propitious opportunity." Salerno, 66 F.3d 544 at 547 (citations

omitted). Predisposition may be shown by evidence of: "'(1) an existing course of criminal

conduct similar to the crime for which [the defendant] is charged, (2) an already formed design

on the part of the accused to commit the crime for which he is charged, or (3) a willingness to

commit the crime for which he is charged as evidenced by the accused's ready response to the

inducement.'" Id. (quoting United States v. Valencia, 645 F.2d 1158, 1167 (2d Cir. 1980)).

There is overwhelming evidence in this case that the defendant was predisposed to commit the

crimes charged. For example, the defendant himself stated on the day of his arrest that he had

obtained false identification documents for relatives and others. Moreover, even if, as the

defendant alleges, the CI approached the defendant and asked him to procure false identification

documents, the defendant willingly agreed to do so. At no point did the defendant express any

hesitation whatsoever about obtaining, possessing, or transferring the false identification

documents. To the contrary, he was ready and willing to commit the crime without persuasion.

       In any event, the Court should deny the motion to dismiss the Indictment based

on entrapment because "the question of entrapment is generally one for the jury, rather than for

the court." Mathews, 485 U.S. at 63; United States v. Labate, No. 00 Cr. 632 (WHP), 2001 WL

533714, at *9 (S.D.N.Y. May 18, 2001) (question of entrapment is generally one for the jury not the court). Rule 12(b) of the Federal Rules of Criminal Procedure only provides for resolution of pretrial motions "capable of determination without the trial of the general issue." As the Second Circuit has explained, "[t]he general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." United States v. Doe, 63 F.3d 121, 125 (2d Cir. 1995). Ordinarily, therefore, a defendant is not entitled to raise in a pretrial motion a defense to liability for the crimes charged, for "resolution of that question requires a trial of the general issue." Id.; see also United States v. Aleman, 286 F.3d 86, 92 (2d Cir.2002) (district court should avoid deciding on a pretrial motion issues relating to a defendant's criminal liability). Because the general issue to be tried will likely include Government inducement and the element of predisposition, defendant's motion based on the entrapment defense should be denied. See United States v. Trupin, No. 97 Cr. 97 (LMM), 1999 WL 262280, at *3 (S.D.N.Y. May 3, 1999); United States v. Persico, 520 F. Supp. 96, 98 (E.D.N.Y. 1981); United States v. DePalma, 461 F. Supp. 778, 794 (S.D.N.Y. 1978).

Although the defendant's motion should be denied because, at most, the claim of entrapment presents a question of fact for the jury, the Government notes that it may oppose a jury instruction on entrapment and may seek, prior to trial, to preclude the defendant from asserting a defense of entrapment. Entrapment is an affirmative defense and the defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a jury instruction on the defense. United States v. Brand, 467 F.3d 179, 189-90 (2d Cir. 2006). If the Court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court need not give the requested jury charge or allow the defendant to present the

44

evidence to the jury.  See United States v. Paul, 110 F.3d at 871; see also United States v. Alicea, 837 F.2d 103, 107 (2d Cir. 1988).  Significantly, "there must be some evidence contradicting proof of predisposition to get the issue of entrapment to the jury."  United States v. Dunn, 779 F.2d 157, 158 (2d Cir. 1985); United States v. Hurtado, 47 F.3d 577 (2d Cir. 1995) ("If the government . . . presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law.").[7]

**B.**     **The Defendant's Claim of Outrageous Government Conduct Does Not Warrant Dismissal of the Indictment**

The defendant appears to be asserting that the Government's role in the offense rose to such a level as to constitute a denial of the defendant's due process rights under the Fifth Amendment.  A complete defense to criminal charges may exist where the conduct of Government agents "is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction."  Hampton v. United States, 425 U.S. 484, 489 (1976); accord United States v. Berkovich, 168 F.3d 64, 68-69 (2d Cir.1999). A motion to dismiss an indictment for outrageous Government misconduct presents a question of law for the district court and a hearing may be appropriate to resolve the issue pretrial. United States v. Cuervelo, 949 F.2d 559, 567 (2d Cir. 1991).  However, "[n]othing in Cuervelo requires a district court to conduct a hearing every time a defendant alleges outrageous government misconduct."  United States v. LaPorta, 46 F.3d 152, 160 (2d Cir. 1994).

Indeed, claims of outrageous government misconduct rarely succeed.  Labate, 2001 WL 533714, at *10 (citing Berkovich, 168 F.3d at 69).  Even if accepted as true, the

---

[7]     To the extent the Government seeks to preclude an entrapment defense, it will do so as part of its in limine motions prior to trial.

allegations here do not even approach the type of conduct that is "so offensive that it 'shocks the conscience.' " United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991).  Extensive Government involvement in the criminal activity, which is what the defendant alleges here, has never been held to show the degree of misconduct necessary to establish a due process violation.  See United States v. Dyman, 739 F.2d 762, 769 (2d Cir. 1984).  In fact, the Second Circuit has rejected claims of outrageous government conduct where the Government had a substantially greater role in the offense than is alleged here. See, e.g., United States v. Romano, 706 F.2d 370, 372 (2d Cir. 1983) (rejecting claim of outrageous government conduct where drug transaction was initiated by Government informant and Government supplied the drugs); United States v. Nunez-Rios, 622 F.2d 1093, 1097-98 (2d Cir. 1980) (rejecting claim of outrageous Government conduct where defendant argued that informant's initiation of drug transaction and supplying narcotics violated due process).  Therefore, because the defendant's allegations, even if true, do not rise to the level of outrageous conduct that might violate due process, the defendant's motion should be denied.

To the extent the Court disagrees, however, rather than hold a pretrial evidentiary hearing, the Court should defer its determination of this claim until after trial.  Indeed, the trend in this Circuit has been to favor post-trial consideration of the defense of outrageous Government misconduct, especially where the alleged conduct is not extreme and, in large part, will be founded upon and intertwined with the defendant's claim of entrapment.  Labate, 2001 WL 533714, at *10.  Deferring the matter until after the evidence has been submitted at trial is fair to all the parties and will conserve judicial resources.  Id. (citing Cuervelo, 949 F.2d at 567).

46

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court

deny all of the defendant's pretrial motions.

Dated:  White Plains, New York
        November 26, 2007

                            Respectfully submitted,

                            MICHAEL J. GARCIA
                            United States Attorney for the
                            Southern District of New York


                    By: s/ Richard C. Tarlowe
                        Richard C. Tarlowe
                        Assistant United States Attorney
                        (914) 993-1963 (phone)

47